## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JORGE PORTILLO URANGA,**

     **Petitioner,**

     **v.**

**UNITED STATES OF AMERICA,**

     **Respondent.**

**Case Nos. 17-CR-20074-JAR-1;**
**23-CV-2129-JAR**

---

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Jorge Portillo Uranga's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 due to ineffective assistance of counsel (Doc. 639).[1]  The Government has filed a Response (Doc. 658), and Petitioner did not file a reply.  After carefully considering Petitioner's arguments, the Court grants the motion, in part, without an evidentiary hearing.  As described in detail below, Petitioner has proven that he was deprived of the effective assistance of counsel based on his counsel's failure to object to the aggravated-role adjustment for his money laundering offenses.  The Court denies all other grounds for relief raised in the motion, and sets this matter for resentencing.

### I.      Background

Petitioner was indicted as a result of a Drug Enforcement Agency ("DEA") investigation into a Kansas City-based drug trafficking organization that distributed cocaine and marijuana. The DEA determined that the drug trafficking organization had ties to a drug cartel in Guadalajara, Mexico.  As part of its investigation, the DEA received judicial authorization to

---

[1] Petitioner titles his motion "Motion to Require Rectification of Sentence in accordance with Art. 2255, Chap. 28 of the Federal Code."  Doc. 639 at 1.  The Court construes this as a motion to vacate, set aside, or correct sentence under § 2255.

intercept the communications of targeted individuals.  The DEA conducted two rounds of wiretaps.  Petitioner's phones were targeted with wiretaps in the second round, from December 2016 until August 2017.  These intercepted communications revealed that Petitioner, who at that point remained unidentified, "was responsible for facilitating the acquisition and distribution of at least 70 kilograms of cocaine and 450 kilograms of marijuana."[2]  Then, in December 2017, DEA agents executed a search warrant at a ranch in Teague, Texas, where Petitioner was arrested and identified for the first time.  In a search of the property, "agents found handguns, assault rifles, fraudulent identification documents, numerous cell phones, cash, a ledger that was possibly used to track drug transactions, and a fuel tank that may have been used to transport drugs."[3]

On January 17, 2018, a grand jury returned a Superseding Indictment against Petitioner and twelve others.[4]  Petitioner was charged with drug trafficking offenses, money laundering offenses, unlawful use of a communication facility (cell phone), and drug possession offenses with intent to distribute.  Petitioner later moved to suppress all evidence derived from the wiretaps.[5]  This Court denied his motion.[6]

On November 21, 2019, Petitioner pleaded guilty without a plea agreement to one count of conspiracy to distribute and possess with intent to distribute marijuana and cocaine; two counts of using a communication facility to facilitate a drug trafficking offense; two counts of money laundering; and three counts of possession with intent to distribute more than 500 grams

---

[2] *United States v. Portillo-Uranga*, 28 F.4th 168, 172–73 (10th Cir. 2022).

[3] *Id.* at 173.

[4] Doc. 42.

[5] Docs. 221, 268.

[6] Doc. 278.

of cocaine.[7]  This Court conducted an extensive plea colloquy with Petitioner before accepting Petitioner's guilty plea.[8]  Petitioner later converted his guilty plea to a conditional guilty plea, to preserve his right to appeal the Court's denial of his suppression motion.[9]

On September 2, 2020, this Court sentenced Petitioner to a controlling sentence of 262 months' imprisonment.[10]  Petitioner appealed to the Tenth Circuit, represented by a new attorney, arguing two points of error: (1) that this Court erroneously denied his motion to suppress; and (2) that this Court improperly applied a sentencing enhancement for firearms possession.[11]  The Tenth Circuit affirmed the Court's denial of Petition's motion to suppress, and affirmed Petitioner's sentence, finding that the Court did not err in applying the enhancement.[12]

## II.    Legal Standards

Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorization by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts: "the judge who receives the motion must promptly examine it.  If it plainly

---

[7] *See* Doc. 322.

[8] *See* Doc. 501 at 2:2–31:2.

[9] Docs. 447 at 2; 502 at 8:19–9:18.

[10] Doc. 489.  Petitioner was sentenced to 262 months' imprisonment on Count 1, and received equal or lesser sentences on the other counts, to run concurrently with the sentence on Count 1.  *See id.* at 3.

[11] *See United States v. Portillo-Uranga*, 28 F.4th 168, 171 (10th Cir. 2022).

[12] *Id.*

appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[13]  Petitioners must allege facts which, if proven, would warrant relief from his conviction or sentence.[14]  An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, are inherently incredible, or when they are conclusions rather than statements of fact.[15]

Finally, Petitioner appears *pro se*.[16]  Therefore, his pleadings are to be construed liberally and not held to the standard applied to an attorney's pleadings.[17]  If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, a court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[18]  It is not, however,  "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[19]  For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[20]

---

[13] 28 U.S.C. § 2255(b).

[14] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).

[15] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 (stating that "the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[16] Petitioner has since retained the assistance of counsel, but his motion was prepared by him *pro se*.

[17] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[18] *Id*.  The Court is also aware that Petitioner's motion was prepared by him in in Spanish, and then translated into English by a translator.  Doc. 639 at 5.  Thus, the Court is careful to liberally construe the grammar, sentence structure, and general style of the motion, as such elements can become muddled in translation.

[19] *Id*.

[20] *See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

## III.    Discussion

Petitioner requests relief under § 2255 on nine grounds of ineffective assistance of his trial counsel[21]: (1) lack of legal protection; (2) lack of legal advice; (3) lack of knowledge about the prosecution evidence; (4) violation of due process and the right to defense; (5) lack of capacity and legal knowledge; (6) erroneous application and misinterpretation of money laundering; (7) misinterpretation of the crime of money laundering; (8) erroneous sentence for money laundering; and (9) illegally obtained evidence.[22]  After carefully considering each of Petitioner's alleged points of error, the Court concludes that Petitioner establishes ineffective assistance of counsel with respect to the money laundering sentence calculation error (ground 8), but that all other grounds for ineffective assistance of counsel fail.

### A.    Ineffective Assistance Standard

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence."[23]  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[24]  First, a petitioner must show counsel's performance was deficient in that it "fell

---

[21] Petitioner never identifies the attorney or attorneys he claims were ineffective at the trial court stage. Petitioner had multiple trial attorneys.  John Picerno entered an appearance on behalf of Petitioner on January 26, 2018, and withdrew from representation on October 31, 2018.  Docs. 67, 137.  Daniel Viets represented Petitioner pro hac vice from November 1, 2018 through the entry of judgment in October 2020, with Brian Leininger as local counsel.  Docs. 140, 498.  The Government refers to Petitioner's counsel as Viets in its Response, and attaches an affidavit from Viets regarding his representation of Petitioner.  Docs. 658 at 14, 658-1.  The Court reasonably infers that Petitioner is challenging Viets' performance because Viets represented Petitioner longer than Picerno, and was the lead counsel (as opposed to Leininger).  Therefore, when the Court refers to "Counsel," the Court is referring to Viets.

[22] For clarity, the Court structures its analysis by reproducing Petitioner's section titles, even though the titles do not always correspond to the substance of the arguments in each section.

[23] U.S. Const. amend. VI.

[24] 466 U.S. 668 (1984).

below an objective standard of reasonableness."[25]  This standard is "highly demanding."[26]  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[27]  In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[28]  Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error, and "every effort should be made to 'eliminate the distorting effects of hindsight.'"[29]

Second, a petitioner must show his counsel's deficient performance actually prejudiced his defense.[30]  To prevail on this prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[31]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[32]  This, in turn, requires courts to focus on "the question whether counsel's deficient performance render[ed] the result of . . . the proceeding fundamentally unfair."[33]

---

[25] *Id.* at 688.

[26] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[27] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (alteration in original) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)).

[28] *Strickland*, 466 U.S. at 689.

[29] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[30] *Strickland*, 466 U.S. at 691–92.

[31] *Id.* at 694.

[32] *Id.* at 689.

[33] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citations omitted).

If a petitioner pleads guilty on the advice of counsel, he may still raise a claim for ineffective assistance of counsel pre-plea. However, he may only collaterally attack "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity."[34] This is because

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.[35]

"As a result, [courts] do not assess the merits of pre-plea constitutional claims but instead ask whether ineffective assistance of counsel caused defendants to enter their guilty pleas involuntarily and unknowingly."

To prove the first prong of *Strickland* in the context of a guilty plea, the question is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[36] To prove the prejudice prong, a petitioner must show that his counsel's deficient performance "affected the outcome of the plea process."[37] The petitioner must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[38] This requires courts to focus on the question of whether counsel's deficient advice rendered the guilty plea invalid.[39]

---

[34] *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). There are four exceptions to *Tollett*, none of which apply here. *See United States v. Spaeth*, 69 F.4th 1190, 1203–04 (10th Cir. 2023) (listing exceptions).

[35] *Tollett*, 411 U.S. at 267.

[36] *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

[37] *Id.* at 59.

[38] *Id.*

[39] *See McMann*, 397 U.S. at 771 (explaining that a defendant "is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.").

A petitioner must satisfy both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[40]  "The performance component need not be addressed first.  'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[41]

## B.      Grounds

### 1.      "Lack of Legal Protection"

Petitioner claims that Viets did not provide him with adequate legal protection.  Petitioner specifically mentions "the right to professional and legal privacy between attorney and detainee,"[42] but otherwise does not identify how his attorney failed to protect him.  If Petitioner is referring to attorney-client confidentiality, Petitioner does not identify any specific communication that should have been kept confidential.  Petitioner does not allege any facts which would permit the Court to conduct an analysis of confidentiality, nor does Petitioner claim that, but for the failure to maintain attorney-client confidentiality, he would have proceeded to trial.  This claim is insufficiently specific to satisfy either prong of *Strickland*.  Thus, the Court denies Petitioner's claim on this ground.

### 2.      "Lack of Legal Advice"

Petitioner claims that he did not understand the crimes he was charged with, the factual basis for the evidence against him, or the legal consequences of his plea.  The Court construes

---

[40] *See Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[41] *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve." (citations omitted)).

[42] Doc. 639 at 1.  Petitioner also mentions "the federal government's failure to offer treatment for compliance with the sentence."  *Id.*  Petitioner could be challenging the Government's decision not to offer him a deal in exchange for proffering, but it is unclear.  Regardless, this complaint is directed towards an alleged omission by the Government, which is not a valid basis for an ineffective assistance of counsel claim.

this claim as an argument that, as a result of ineffective advice of counsel, his plea was not knowing and voluntary.  As explained in further detail below, the Court finds that Petitioner's plea was knowing and voluntary.

Beginning with the performance prong of *Strickland*, the Court finds that Viets' advice to Petitioner recommending that he plead guilty was reasonable.  There was a significant amount of evidence against Petitioner and his co-defendants, and Petitioner makes no argument to support a finding that it would have been "rational under the circumstances" to maintain his innocence.[43] Indeed, Petitioner does not allege any facts indicating that Viets' advice to plead guilty was deficient, but rather alleges that his counsel failed to make him aware of the nature of the evidence and charges against him.  However, Viets submitted an affidavit stating that he "did faithfully and accurately describe to [Petitioner] the charges against him and the evidence as disclosed to me by the [AUSA]."[44]  Viets explains that he gave Petitioner an opportunity to review all of the discovery material, and that Petitioner never requested more time to do so. Viets further states that he believes Petitioner's sentence would have been substantially harsher if he did not plead guilty[45] and that it was in Petitioner's best interest to plead.[46]  Without a specific allegation of deficient advice, there is no cause to doubt the reasonableness of Viets's advice to plead guilty.

The Court finds that there was no deficient performance, but that even if there were, Petitioner suffered no prejudice because he fails to show that, but for Viets' deficient

---

[43] *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

[44] Doc. 658-1 at 2.

[45] Petitioner's ultimate sentence of 262 months was at the bottom of the guidelines range, and took into account a reduction for acceptance of responsibility because of his guilty plea.  *See* Docs. 489 at 3; 439 at 21.

[46] *See Tollett v. Henderson*, 411 U.S. 258, 268 (1973) (noting that the "prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea.").

performance, he would not have pled guilty.  As described in detail below, the Court's colloquy

advised Petitioner of the crimes, the factual basis, and the legal consequences of the plea.

Petitioner said that he understood all the above, and still wished to plead guilty.

"To enter a plea that is knowing and voluntary, the defendant must have 'a full

understanding of what the plea connotes and of its consequence.'"[47]  "Rule 11 of the Federal

Rules of Criminal Procedure prescribes procedures designed to ensure a plea is made knowingly

and voluntarily."[48]  Absent a believable reason justifying departure from their apparent truth, the

accuracy and truth of a defendant's statements at a Rule 11 proceeding at which his plea is

accepted are conclusively established.[49]

The transcript of the change-of-plea hearing establishes that Petitioner's guilty plea was

knowing and voluntary.  At the plea hearing, Petitioner acknowledged that he had discussed the

charges, the Government's evidence, and the sentencing consequences of pleading guilty with

counsel.[50]  This acknowledgement supports Viets' averments in his affidavit.  Petitioner also

indicated that he was satisfied with the advice and representation he received from counsel; that

it was his decision to enter the plea; that no one threatened or coerced him to make that decision;

and that the decision to plead guilty was made voluntarily and of his own free will.[51]  The Court

then engaged in an extended colloquy with Petitioner about the maximum sentencing penalties

---

[47] *United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)).

[48] *United States v. Elias*, 937 F.2d 1514, 1517 (10th Cir. 1991).

[49] *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975).

[50] Doc. 501 at 3:21–4:5.

[51] *Id.* at 4:23–25; 5:6–18.

he faced for each charge, the lack of parole availability in the federal system, and the fact that the Court had ultimate control over the sentence.[52]

Given the breadth of the Court's Rule 11 colloquy with Petitioner, as well as Petitioner's failure to identify any specific error which rendered his guilty plea invalid, there is no reason to disbelieve the validity of Petitioner's guilty plea.  Petitioner's general assertions are insufficient to outweigh the presumed truthfulness of Petitioner's admissions at his plea hearing.[53]  And since the Court finds that Petitioner's plea was valid, Petitioner has failed to show a reasonable probability that, but for counsel's allegedly deficient advice, he would have insisted on going to trial.[54]  Therefore, he cannot establish the prejudice prong under *Strickland*.

The Court denies Petitioner's claim on this ground for failure to demonstrate either prong of *Strickland*.

### 3.    "Lack of Knowledge About the Prosecution Evidence"

Petitioner claims that he did not know about certain reports that detailed the factual basis for the charges against him, and thus could not defend himself against the accusations.  Petitioner labels these reports "the Criminal Investigation report written by Federal Government Agents (discovery)," and the "Note Verbale written by the main Agent of the DEA."[55]  These identifications are insufficiently specific for the Court to analyze whether Petitioner was provided access to the particular documents.  However, Viets' affidavit provides that he gave Petitioner "an opportunity to examine all of [the] discovery material" which the AUSA disclosed to him.  Given the vagueness of Petitioner's claim, and Viets' sworn affidavit that he provided

---

[52] *Id.* at 6:4–14:11.

[53] *See Hedman*, 527 F.2d at 22.

[54] *See United States v. Young*, 206 F. App'x 779, 785 (10th Cir. 2006).

[55] Doc. 639 at 2.

Petitioner with an opportunity to review discovery, there are no facts to support a finding that Viets' performance in sharing discovery with Petitioner was unreasonable.  Nor does Petitioner allege that he would not have pleaded guilty if he had access to these reports.  The Court denies Petitioner's claim for relief on this ground.

### 4.   "Violation of Due Process and the Right to Defense"

In this section, Petitioner makes two claims of error: (1) his attorney did not negotiate a deal with the Government; and (2) his attorney did not file a sentencing memorandum.  First, Petitioner's claim regarding plea negotiations is contradicted by the record.  In his affidavit, Viets states that he "engaged in repeated and persistent efforts to reach an agreement with the Assistant United States Attorney ("AUSA") assigned to this matter."[56]  Additionally, at Petitioner's plea hearing, Petitioner confirmed that he was aware of the plea negotiations, that he was involved, and that he knew what was being offered back and forth.[57]  Thus, the Court denies relief on this ground because Petitioner's claim is contradicted by the record.

Second, Petitioner claims that his attorney's decision not to file a sentencing memorandum was error because his counsel did not present evidence about Petitioner's personal characteristics, such as "economic, social, personal and family profile as a son, husband and father of a family."[58]  However, this too is contradicted by the record.  At the three-day sentencing hearing, Viets called numerous witnesses to testify about Petitioner's good character, including Petitioner's ex-wife who testified about their children.  Viets also called several witnesses who testified about Petitioner's legitimate business and modest lifestyle.  Viets reminded the Court several times that Petitioner had no criminal history, and was not accused of

---

[56] Doc. 658-1 at 2.

[57] Doc. 501 at 5:6–5:11.

[58] Doc. 639 at 2.

any violence associated with the charges.[59]  Viets also argued that the sentencing factors under 18 U.S.C. § 3553(a) weighed in favor of a ten-year sentence, a significant variance from the guidelines.

Given that Viets made several objections to the presentence report, and argued for a variance under § 3553(a), the Court declines to find that Viets' performance at sentencing was deficient.  Moreover, Petitioner presents no argument as to how the lack of a sentencing memorandum prejudiced him, particularly in light of the robust defense at sentencing described above.[60]  Thus, the Court denies Petitioner's claim on this ground.

### 5.    "Lack of Capacity and Legal Knowledge"

Petitioner argues that his counsel did not have "the adequate experience for professional performance before a federal court,"[61] and, as a result, lacked legal knowledge and professional ethics.  These claims are insufficiently specific, given that Petitioner does not identify any particular legal error committed by Viets.  And regarding Viets' experience, he states in his affidavit that he has represented defendants in federal courts for over 37 years.  Thus, the Court denies Petitioner's claim for relief on this ground because his claim is contradicted by the record and overly vague.

### 6.    "Erroneous Application and Misinterpretation" of Money Laundering

---

[59] As just one example, after the Court announced its tentative sentence of 262 months, Viets addressed the Court and stated, "Your Honor, this is an incredibly harsh sentence for a man with no prior criminal history, with no indications of violence whatsoever."  Doc. 499 at 43:21–23.

[60] *See Montoya v. United States*, No. 12-CV-36-F, 2012 WL 12895204, at *6 (D. Wyo. July 30, 2012) ("There is no basis to find a sentencing memorandum would have been more successful than counsel's in court arguments.").

[61] Doc. 639 at 2.

In this section, Petitioner alleges that his counsel was ineffective because he allowed the Court to rely on unproven statements from the Government about the factual basis for the money laundering offenses at the sentencing hearing.[62]  Petitioner does not challenge any specific statement relied upon by the Court, thus, the Court cannot engage in an analysis of whether Viets' performance was deficient.  However, the Court notes that Viets cross-examined each of the Government's witnesses in an attempt to diminish the probative value of their statements. Without any specific factual allegations, and without an allegation of prejudice, the Court denies Petitioner's claim for vagueness.

### 7.    "Misinterpretation of the Crime of Money Laundering"

Petitioner argues that the Court misinterpreted the crime of money laundering.  Petitioner also challenges the factual basis of the two money laundering charges by arguing that there was no proof that he was personally involved in laundering money.  Petitioner makes no mention of his attorney in this claim, and thus fails to assert a claim for ineffective assistance of counsel. Nonetheless, even if Petitioner had argued that his attorney was ineffective by failing to correct the Court's supposed misinterpretation, Petitioner's arguments fail because they are inaccurate.

Beginning with the offense itself, Petitioner asserts that money laundering is defined as "when a person or the activity of a person generates certain amounts of Money of Illicit origin, to subsequently convert it through the National Banking System into Lawful Money for commercial activities."[63]  Petitioner then argues that he did not commit the crime of money

---

[62] Petitioner's argument in this section states: "In the present reason I consider that as a result of poor legal representation by allowing the erroneous application and misinterpretation by giving probative value to the statements of the prosecution without having proven the factual evidence platform and reproduce them in the oral and public trial to support the statements and have been concatenated (sic) with the evidence resulting during an investigation stage prior to my arrest." Doc. 639 at 2.  The Court liberally construes this argument as a challenge to the Court's consideration of the Government's statements and evidence produced at Petitioner's sentencing hearing.

[63] Doc. 639 at 3 (capitalization in original).

laundering because there was no evidence that he carried out any activity related to the national bank.  However, the elements of money laundering do not require that illicit funds are converted through the national banking system.  The statutory definition of the crime states that it shall be illegal for a person who

> transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—with the intent to promote the carrying on of specified unlawful activity.[64]

Many crimes constitute "specified unlawful activity," but the statute expressly includes unlawfully buying, selling, or dealing controlled substances.[65]  Thus, Petitioner's argument that he did not commit money laundering because he did not have any connection with the national bank is unfounded.

Turning to Petitioner's challenge of the factual basis of his money laundering charges, Petitioner argues that there was no proof that he had any relationship with the seized money presented as evidence in his case.  However, at Petitioner's change-of-plea hearing, Petitioner admitted to engaging in conduct which corresponded to the elements of money laundering, on the two separate occasions charged in Counts 7 and 13.  The Government stated the factual basis for Count 7 at the change-of-plea hearing, which includes: (1) intercepted calls on April 27 and 28, 2017, between Petitioner and Primo, wherein Petitioner discussed the transfer of approximately $100,000 to Texas to pay a Mexican drug supplier; (2) intercepted calls between Petitioner and Primo discussing sending Julio Calzada to deliver the money; (3) agents' observation of Calzada meeting with a female in Texas on April 28, 2017, and placing a

---

[64] 18 U.S.C. § 1956(a)(2)(A).

[65] *See* 18 U.S.C. § 1956(c)(7)(A); 18 U.S.C § 1961(1)(D).

cardboard box in her car; and (4) later search of the female's vehicle at the U.S./Mexico border, discovering $99,840 in U.S. currency hidden in the vehicle.[66]

This factual account showed that Petitioner, along with Primo, Calzada, and the female, knowingly and intentionally attempted to transport $99,840 in U.S. currency from Kansas City, Kansas to Mexico.  It also showed that Petitioner committed these acts with the intent to promote the distribution of, or possession with intent to distribute, cocaine and marijuana.

Similarly, the Government stated the factual basis for Count 13 at the change-of-plea hearing, which includes: (1) calls intercepted from one of Primo's target telephones on July 6 and 7, 2017, suggesting that Primo would travel to Wichita, Kansas, to meet with one of Petitioner's drug couriers; (2) calls indicating that Primo would give the courier a motorcycle and U.S. currency to transport back to Texas, and ultimately to Mexico as drug proceeds; (3) surveillance of a meet between Primo, Parral, and the courier, wherein agents observed Primo placing a box in the courier's truck, and Primo and Parral transferring a motorcycle to the courier's trailer; and (4) a later search of the courier's vehicle, finding $64,980 in U.S. currency inside the box Primo loaded into the truck.[67]

The factual basis showed that Petitioner, along with others, knowingly and intentionally attempted to transport $64,980 in U.S. currency from Kansas City, Kansas to Mexico, with the intent to promote the distribution of, or possession with intent to distribute, cocaine and marijuana.  After the Government read these comprehensive accounts into the record, the Court summarized the factual basis for each charge and asked Petitioner whether he did what he was

---

[66] *See* Doc. 501 at 17:13–18:11.

[67] *Id.* at 23:21–24:23.

charged with doing.  Petitioner replied "yes."[68]  Petitioner then proceeded to plead guilty to both counts of money laundering.

Based on the record, there was no clear basis on which Viets could challenge Counts 7 or 13.  The factual bases for the two counts of money laundering were premised on intercepted phone calls, which Viets attempted to suppress.  Beyond suppression, Petitioner has not identified any meritorious argument that Viets should have made to avoid the money laundering charges.  And at the plea hearing, Petitioner admitted to engaging in conduct that conformed with the statutory elements of the offense, as defined in § 1956(a)(2)(A).  Thus, it was not deficient for Viets to refrain from objecting to the money laundering charges.

Petitioner has also failed to show prejudice.  Petitioner has not identified any errors committed by Viets which would have rendered his guilty plea invalid.  Rather, Petitioner challenges the legal and factual bases for the charges against him.  As the Court explained above, Petitioner has not identified any meritorious objection that Viets could have made.  Thus, Petitioner has not shown that Viets' failure to object to the money laundering charges prejudiced him.[69]

The Court denies Petitioner's claim on this ground for failure to demonstrate either prong of *Strickland*.

### 8.    "Erroneous" Sentence for Money Laundering

Petitioner argues that the Court miscalculated the applicable sentencing guidelines on the money laundering offenses, and that it was error for his counsel not to object.  Petitioner asserts

---

[68] *Id.* at 29:10.

[69] *See United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022) ("In particular, if an argument is meritless, it is likely that the failure to raise it was not deficient performance.  But in any event, the lack of merit establishes that the defendant was not prejudiced by the failure to argue the point, thereby defeating the ineffective-assistance claim.").

that the Court made the same errors in calculating his sentence as it did when calculating the sentence of a co-defendant, Jesus Arellanes-Portillo.  This Court sentenced Arellanes-Portillo to 188 months' imprisonment.  The Tenth Circuit reversed Arellanes-Portillo's sentence, finding that it was plain error to base the aggravated-role adjustment for Arellanes-Portillo's money laundering offenses on the relevant conduct from his drug trafficking offenses.[70]  The Government concedes that the sentencing calculation in Petitioner's case contains the same error.[71]  However, the Government argues that the error was harmless because, assuming the aggravated-role adjustment applies, the corrected guidelines range would be the same as the range that the Court originally applied: 262–327 months.

The Tenth Circuit's decision in Arellanes-Portillo's direct appeal supports a finding that Viets' failure to object to the money laundering aggravated-role enhancement deprived Petitioner of the effective assistance of counsel.  The Tenth Circuit reviewed this Court's application of the sentencing guidelines to Arellanes-Portillo for plain error, considering whether he showed "(1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."[72]  As described above, the Tenth Circuit found that "the district court largely based its aggravating-role adjustment for the money-laundering offenses on relevant conduct from the drug offenses," and that this error was plain.[73]  The Tenth Circuit explained that the USPO, the parties, and the court

---

[70] *United States v. Arellanes-Portillo*, 34 F.4th 1132 (10th Cir. 2022).

[71] The Government also concedes that Petitioner's original presentence investigation report ("PSR") does not follow the Tenth Circuit's suggested structure.  *See id.* at 1137–38.  In its opinion, the Tenth Circuit pointed to the probation office "skipping steps," particularly: (1) "the PSR didn't separate the drug and money-laundering counts into two separate groups of closely related counts"; (2) "the PSR should have calculated a total offense level for each of the two groups of closely related counts"; and (3) "the PSR should have grouped the two separate drug and money-laundering groups" and applied "whichever group yielded the higher total offense level."  *Id.*

[72] *Id.* at 1138 (quoting *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009)).

[73] *Id.* at 1139.

failed to heed the text of the Guidelines and prior Tenth Circuit precedent.[74]  Faced now with the same error in Petitioner's sentencing, the Court easily concludes that Viets' failure to object was deficient under *Strickland*.

The Tenth Circuit's finding that the calculation error caused Arellanes-Portillo substantial prejudice supports a finding that Petitioner was prejudiced by Viets' deficient performance under *Strickland*, because "the substantial-rights prong of plain-error review is identical in form and substance to the prejudice prong of *Strickland*."[75]  The Tenth Circuit declined to speculate about whether the aggravated-role enhancement would still apply to Arellanes-Portillo, after considering only the relevant money laundering offense conduct, because it "lack[ed] critical district-court findings about the identity or number of 'participants.'"[76]  The Tenth Circuit noted that the requisite "determinations of witness credibility and of offense elements including knowledge and intent" were not suited to resolution "[f]rom a cold record," and "[we]re best left to the district court on remand."[77]  Thus, the Tenth Circuit held that there was "a 'reasonable probability' that 'but for the error,' 'the result of the proceeding would have been different.'"[78]

Here, too, the record is cold and lacks the specific findings necessary to conclude that the aggravated-role enhancement would apply, if based solely on the relevant conduct for the money laundering offenses.  The Government conceded in its response that "th[e] Court did not make a specific determination as to [Petitioner's] role in the money laundering offense, as opposed to the

---

[74] *Id.* at 1140.

[75] *United States v. Hinson*, 475 F. App'x 298, 304 (10th Cir. 2012); *see also Williams v. Trammell*, 782 F.3d 1184, 1199 n.2 (10th Cir. 2015) ("It follows that when a substantial-rights standard requires no more than *Strickland*, as is true of the federal plain-error standard, the standards are 'virtually identical.'" (quoting *Close v. United States*, 679 F.3d 714, 720–21 (8th Cir. 2012), *cert. denied*, 133 S.Ct. 464 (2012))).

[76] *Arellanes-Portillo*, 34 F.4th at 1141.

[77] *Id.*

[78] *Id.* at 1141–42.

drug offense."[79]  However, the Government asserts that the Court's finding that Petitioner "was at the top of the pyramid" and led the organization is sufficient evidence to assume that he also controlled the money laundering.[80]  While such a conclusion is certainly possible, there is a reasonable probability that, upon resentencing, the Court might reach a different conclusion.  As the Tenth Circuit counseled, a "reasonable probability" is one that "undermine[s] confidence in the outcome."[81]  Without factual findings that delineate Petitioner's relevant conduct for the money laundering offenses, separate and apart from the relevant conduct for the drug trafficking offenses, the Court's confidence in the suitability of the aggravated-role enhancement is undermined.  And though Petitioner "may ultimately fail in lowering his advisory guideline range," there is "a sufficient basis on which . . . [to] impose a lower advisory guideline range."[82]  Therefore, the Court finds that Petitioner has made a sufficient showing of prejudice to satisfy the second prong of *Strickland*.

An evidentiary hearing is not necessary because Petitioner has proven that the money laundering calculation error satisfies both prongs of *Strickland* on the current record.  The Court finds that the appropriate relief is to set this matter for resentencing.  Thus, as to this ground, Petitioner's motion is granted.

### 9.    Illegally Obtained Evidence

Finally, Petitioner claims that Viets failed to object to the Court's consideration of illegally obtained evidence to support the drug trafficking conspiracy charge.  Petitioner claims that evidence obtained through "call interceptions, controlled deliveries, undercover agents,

---

[79] Doc. 658 at 28 n.4.

[80] *Id.*

[81] *Arellanes-Portillo*, 34 F.4th at 1141 (quoting *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008)).

[82] *Id.* at 1142.

[and] video surveillance cameras"[83] lacks probative value because the Government did not receive judicial authorization to engage in those activities.

Petitioner's claims are overly vague and contradicted by the record.  The record reflects that both rounds of wiretaps were judicially authorized.  Regardless, Viets filed a motion to suppress all evidence derived from the wiretaps, which the Court denied.[84]  Thus, it would have been erroneous for Viets to revive his arguments about the admissibility of wiretap evidence at sentencing.  However, Viets preserved Petitioner's right to appeal the denial of his motion to suppress, and Petitioner did in fact seek appellate review of the suppression issue.  Thus, Viets' performance was not deficient in his attempt to exclude wiretap evidence from the Court's consideration.  Given Viets' performance in objecting to the wiretaps, and without a specific challenge to any particular evidence that the Court considered, the Court declines to find Viets' general performance in responding to evidence deficient.

Petitioner also fails to argue that he suffered prejudice from the Court's consideration of wiretap evidence.  Rather, Petitioner makes only general claims that the Government introduced illegal and unconstitutional evidence against him.  General, conclusory claims are insufficient to establish prejudice.[85]  Without specifics, Petitioner cannot establish either prong of *Strickland*. Moreover, on direct appeal, the Tenth Circuit affirmed the Court's denial of Petitioner's suppression motion.  Therefore, the Court denies Petitioner's claim for ineffective assistance of counsel on this ground.

## IV.    Certificate of Appealability

---

[83] Doc. 639 at 4.

[84] Doc. 278.

[85] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).

Under Rule 11 of the Rules Governing § 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[86]  A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[87]  For the reasons stated above, Petitioner has not made a substantial showing of the denial of a constitutional right as to grounds 1–7 and 9.  The Court therefore denies a COA as to those issues.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Jorge Portillo Uranga's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 639) is **granted in part and denied in part**, without an evidentiary hearing.  The Court sets this matter for resentencing.

**IT IS SO ORDERED.**

Dated: July 16, 2024

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE

---

[86] 28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable "unless a circuit justice or a circuit or district judge issues a certificate of appealability."  Fed. R. App. P. 22(b)(1); *see* 28 U.S.C. § 2253(c)(1)(B).

[87] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).